Mr. Bell, we are going to begin with an oral argument from you. I'm going to ask for leave of the court to allow me to put my cell phone on. Absolutely. It controls my hearing aids. That's fine. There's an app for that. May I please the court? As the court has announced, I have the privilege of representing Mr. Tovar.     That's fine. There's an app for that. May I please the court? As the court has announced, I have the privilege of representing Mr. Tovar.   May I please the court?  That's fine. Thank you. Be seated. Your Honor, Justice Barrett's memo, very interesting. I think I referred to it. It merely says it's the commission's responsibility. So it looks like that's going to be the fight. I find it offensive because it is so diverse. Because depending on what district you get arrested in and depending on what state you had your prior, you may hire, you may not, you may get the enhancement, you may not. And that's unfair, but I can't solve that here in the Seventh Circuit. So, I want to talk about the second issue I had, which was the conversion of the cash into marijuana equipment. Now, the problem with that is, the standard is kind of a loosey-goosey standard, I thought. Let me get my notes. When there is sufficient basis to believe that cash found in the defendant's possession was derived from the drug sales, the court properly includes the drug equivalent. Now, we don't even have any marijuana sales in this case. We do have at least two cocaine sales, but they were for very small amounts. The cocaine in total, I think, was 5.1 gram. Marijuana was more than that. So, there's other things that you need to look at rather than, well, if it was a sale, it must be it. He didn't get that much money in either of the purchases, or the sales that were controlled. He did, he got $26,000 a year earlier from a legitimate source. Now, so credit unions are not going to lend him $26,000 unsecured if he doesn't have a significant way of showing to be paid. Okay? So, he's got somewhere, and where it is is in those cars that he was buying at auction and selling to make money. He would buy them at auction, he would improve them, and he'd take them to this dealership and have them sell them. Now, the pre-sentence investigation report writer called that agency or wrote to him, I don't know how she contacted him, and that automobile dealership said, he is not employed by us, but he buys cars, he fixes them up, he brings them here, we sell them, and we have to sign the papers. And that's in the pre-sentence investigation report. That's a legitimate thing that he could earn the money. And so, to jump to the conclusion that just because there's money in the house, we are simply making it illegal to have cash in your house. I mean, it's just crazy, in my opinion. The court needs to look at that. Why can it be so diverse? He had a source of income. He had a legitimate loan. So, our position is that that's not, that this standard is kind of different than what I'm used to. I'm used to probable cause and preponderance of the evidence and so forth, and the court nodded. I'm not used to sufficient basis to believe. Now, the problem with sufficient basis to believe, it's so loosey-goosey. Is there a sufficient basis to believe an election was stolen? A lot of people say yes, a lot of people say no. What kind of standard is that? So, we object to the standard, and we think that given his legitimate source of income and the fixing and selling cars, which was verified by the agency, should be sufficient to challenge the sufficient basis to believe. So, we think the court incorrectly converted $38,000 into marijuana when there was a valid reason to have the $38,000. Now, it is a little unusual that he didn't put it in a bank as opposed to in his house, but some people don't trust banks. My grandmama put her money in the mattress. So, draw your own conclusions about that. With regard to the second issue I want to address is the refusal to allow Mr. Tovar to withdraw his guilty plea. The interesting thing about that is he had an attorney for a long time, court-appointed attorney, and he was dissatisfied with him, with her, I guess. She was from the public defender's office, federal defender's office. He was dissatisfied with her, and the family hired privately another attorney. And as I calculated, eight days later, he walked into court, pled guilty to every count without a plea agreement. How effective can an attorney be with a situation like this in eight days? Okay? Now, he wanted to withdraw his guilty plea because he thought that he could show that he was legally innocent because of a threat he received. At page five, I think it is, of the appendix, you will see a text message he received, or I think his girlfriend received, and it shows, automatic, with a magazine, bullets in it, R.I.P. Michael and Romello Tovar. That looks an awful lot like a threat to me, and it's a threat with a gun. Under those circumstances, shouldn't he have been able to own a gun to protect himself? There's a case law that says that, and we're saying he should be able to do that. Would you like to reserve the remainder of your time? Yeah, I got 37 seconds. Oh, very good. Okay. So that's the argument on that. You know, Your Honor, I think I will save the rest of it. Very good. Thank you, Mr. Bell. Thank you, Your Honor. We're now going to move to argument from the government. Mr. Simpson. Thank you, Your Honor. As may it please the Court, I'm Scott Simpson on behalf of the United States. I'd like to point out a number of things from Mr. Bell's argument. First of all, the amount of money involved here is $38,916. The standard of review for the district court on that, the standard that the district court is supposed to look at on that, true is whether there was a sufficient basis to believe that the cash found in the defendant's possession was derived from judge sales. I disagree that that's a, quote, loosey-goosey standard. That is the standard. The fact that it isn't more fleshed out, that there aren't a number of steps to that standard, indicates that it is an easy standard to meet. It is a pretty low threshold. Of course, the standard of review for this court is also pretty low. That is clear error. We believe there was more than sufficient basis to believe that that money was from drug sales. He was carrying hundreds of dollars when he was arrested at the bar, and hundreds of dollars in cash and cocaine packaged for sale in his house. The police found the rest of his drugs, the rest of his cash, the tools of his drug trade, specifically in his bedroom. He had some of his marijuana and cocaine. He had one of his scales for weighing drugs. He had also in the bedroom inositol powder for cutting the cocaine. He had $5,000 in a jacket pocket in the bedroom closet, $3,300, $500 more under a vent in the bedroom, and his pistol and ammunition for the pistol, all of that in the bedroom. Elsewhere in the house he had the rest of his marijuana and cocaine and another scale. I want to make sure that this court is clear. This is reflected in the lower court's record, but just to put it in the argument here, the total amount of cocaine found in Mr. Tovar's house was 29.7 grams of cocaine. The total amount of marijuana was 164.4 grams of marijuana. Clearly, clearly distribution amounts of both of those drugs. And at the plea hearing, when the district court asked Mr. Tovar whether the gun was near the drugs, Mr. Tovar ultimately admitted that it was. Now in those documents that the defendant submitted below to try to show that the cash came from legitimate sources, there are basically two categories, bank statements and documents showing purchases and sales of vehicles. As the court observed, Mr. Bell pointed out that apparently Mr. Tovar allegedly didn't trust banks. Actually, those documents that he submitted showed that he trusted banks at least to transfer funds. That's apparently what he was mostly doing, using banks for. The bank statement suggested that he liked using banks to transfer money, but nevertheless, as the district court pointed out, he was keeping $38,000 in cash in his house. Another interesting point on those bank documents is they show deposits made in the Quad Cities area, but most or at least a large number of the withdrawals of cash shown in those bank documents were made elsewhere in Laredo, Texas on the Mexican border. So Mr. Tovar didn't have most of the cash that had been put into those bank accounts or credit union accounts. Someone else had gotten a lot of that cash out in Laredo, Texas. In the vehicle documents that show the sale and purchase and then sale of vehicles, yes, they showed that Mr. Tovar bought some cars. We don't know how he got the cash that he used to buy those cars. Those documents show sales of vehicles, but they show sales of vehicles made by a dealership without Mr. Tovar's participation. The bottom line here on all those documents, Your Honors, is they show some cash changing hands. They show some vehicles being bought and sold, but none of those documents actually show how Mr. Tovar got his cash. And also, one more point on those vehicle documents. If you look at the purchase prices and the sale prices on those documents, it looks like the average profit on each car was a little over $1,400. So Mr. Tovar would have had to have sold an awful lot of cars, assuming he was selling cars in his own name at all, to make more than $38,000. So definitely the court did not commit clear error in concluding there is a sufficient basis to conclude that the cash was from drug sales. A few points, if I could, about the other issue, the evidence you're hearing issue. I was a little bit surprised to hear Mr. Tovar's attorney. I believe the language was that Mr. Tovar was challenging the denial of his request to withdraw his guilty plea. That's actually not true in this appeal, at least. Now, in the court below, he never actually moved. He never actually filed a separate motion to withdraw his guilty plea. He did put in his sentencing memorandum, I think it was, he did say that the court should allow him to withdraw his guilty plea. But in any event, if you look at the defendant's brief here, he actually is not challenging the denial of a request to withdraw his guilty plea. The issue here is only the district court's denial of his request for an evidentiary hearing. And there was certainly no abuse of discretion in that because, among other things, the district court actually accepted Mr. Tovar's factual assertions in support of that request to withdraw his guilty plea. The court just said, even aside from all of those facts, I still deny, I still don't think there's any basis here to withdraw the guilty plea. So, obviously, there would have been no reason, there would have been nothing to discuss in an evidentiary hearing because the defense did put on some facts, they did submit some documents and so forth in support of being able to withdraw the plea. But the district court said, okay, I accept those facts as true, but I still exercise my discretion to say we don't need a hearing here. And so a hearing could have added nothing. So, for all those reasons, Your Honors, we urge the court to affirm Mr. Tovar's conviction and sentence. Thank you very much, Mr. Simpson. Mr. Bell, we'll move back to you for rebuttal argument. Thank you. May it please the court. Excuse me. I wanted to address distribution amounts of controlled substances. We don't have large amounts. We don't have big transactions. You know, a sale in a bar is what happened, you know. It's not like we got a kilo or four kilos or half a pound. It's 1.4 or something, 1.7, something like that. So it's not big sales, it's not a big contract, as you would get at the top of a conspiracy where they're bringing in whole amounts or even further down on a conspiracy. So our position is that the court should have given us a full-blown hearing on a motion to withdraw so we could have put on full evidence and demonstrate that he had a legitimate defense and that because his second attorney only represented him for eight days, they didn't have enough time to really hash that out and decide. And, you know, any attorney can talk their client into pleading guilty. It's not hard. They've done this 35 years, and I can talk them into it if I want to. I won't. I won't. I'll give them these options and say, do what you want, here's what happens. But I particularly know this attorney, and I'm not aware he's ever done a trial. That might be an issue. It might be an issue as an ineffective assistance counsel if he's using his position to tell the guy he's got to plead guilty. And I've seen it done. So that's the concern. Eight days just drives me crazy. I can't get anything done in eight days with a criminal case this size. Seven or eight counts, guns, drug search warrant, all of that. I can't do it. So that's our position, that he should have been given a hearing so he could put on the full information and that the cash should not have been converted. Thank you very much, Mr. Bell. Thank you very much, Mr. Simpson. The case will be taken under advisement, and that will end the court's hearings for the day.